IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

UNITED STATES OF AMERICA and )
STATE OF GEORGIA ex rel.        )
CHAD WILLIS,                    )
                                )
        Plaintiffs-Relator,     )
                                )
v.                              )    CASE NO. CV410-124
                                )
SOUTHERNCARE, INC.,             )
                                )
        Defendant.              )
                                )
_____ )

## O R D E R

Before the Court are Defendant's Motion to Dismiss for
Failure to Plead Fraud with Particularity (Doc. 56), Motion
to Dismiss for Failure to State a Claim (Doc. 57), and
Motion to Dismiss for Lack of Subject Matter Jurisdiction
(Doc. 58).[1]  For each motion, Plaintiff has filed a response
(Doc. 59; Doc. 60; Doc. 61), to which Defendant has filed
replies (Doc. 69; Doc. 70; Doc. 71).  Also before the Court
is Relator's Motion to Dismiss Defendant's Counterclaim.
(Doc. 62.)  Defendant has filed a response (Doc. 72), to
which Relator has filed a reply (Doc. 76).

---

[1] For reasons unknown to the Court, Defendant has filed a
separate motion for each theory upon which it believes
Relator's complaint could be dismissed.  Because the Court
can discern no reason why these claims should be analyzed
independently, however, it will address each of them in
this order.

After careful consideration, Defendant's Motion to Dismiss for Failure to State a Claim (Doc. 57) is **GRANTED IN PART** and **DENIED IN PART**. All Relator's claims relating to fraudulent admissions or recertifications of ineligible hospice patients prior to September 1, 2008 are hereby **DISMISSED**. Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. 58) is **DENIED**. Defendant's Motion to Dismiss for Failure to Plead Fraud with Particularity (Doc. 56) is **GRANTED**. However, Relator shall have **fourteen days** to submit an amended complaint correcting the deficiencies identified in this order. Relator is on **NOTICE** that failure to do so will result in dismissal of this case. Relator's Motion to Dismiss Counterclaim (Doc. 62) is **GRANTED**.

## BACKGROUND

This case involves claims brought by the United States under the False Claims Act ("FCA"), 31 U.S.C. § 3729, and the Georgia Medicaid False Claims Act ("GMFCA"), O.C.G.A. § 49-4-168(b).[2]  (Doc. 50 ¶¶ 46-67.)  Relator, who is a

---

[2]  For the purposes of Defendant's motions to dismiss, Relator's allegations set forth in its complaint will be taken as true.  See <u>Sinaltrainal v. Coca-Cola Co.</u>, 578 F.3d 1252, 1260 (11th Cir. 2009).  However, for the purposes of Plaintiff's Motion to Dismiss Counterclaim (Doc. 62), Defendant's allegations set forth in their Amended Answer and Counterclaim (Doc. 55) will be taken as true.  See <u>id.</u>

former employee of Defendant,[3] filed a qui tam complaint under seal pursuant to 31 U.S.C. § 3730(b)(2) on May 18, 2010. (Doc. 1.) The original complaint alleged false claims and inducement under the FCA and GMFCA, as well as conspiracy to commit fraud and common law claims of suppression, fraud, and deceit. (Id. ¶¶ 23-50.) After receiving six extensions of time to make its decision, the United States notified the Court on February 4, 2013 that it was declining to intervene in this matter. (Doc. 31.) Then, on February 5, 2013, the Court ordered the complaint unsealed and served on Defendant. (Doc. 32) On June 4, 2013, Relator requested Defendant waive service of the complaint, and in response, Defendant executed the waiver of service on June 5, 2013. (Doc. 34.)

Defendant is a large provider of hospice care services operating throughout the southeast. (Doc. 50 ¶ 3.) Relator worked as a Community Relations Director—a type of sales position—for Defendant beginning in 2005 until September 9, 2010. (Id. ¶ 4.) While Relator was employed by Defendant, another of Defendant's employees, Tonja Rice, brought a qui tam action against Defendant in the Northern District of Alabama on April 27, 2005. (Doc. 58, Attach. 1

---

[3] Relator filed this action while apparently still employed by Defendant, but has since left the company. (Doc. 50 at 1.)

at 1.)[4]   Ms. Rice alleged that Defendant fraudulently submitted false claims for hospice care patients who did not meet hospice eligibility criteria. (Id. at 2.)   On December 26, 2007, another employee of Defendant, Nancy Romeo, brought a separate qui tam action alleging the same actions in the Northern District of Alabama. (Id.)   The United States Government eventually intervened in both of these cases to settle with Defendant. (Id.)   Pursuant to the settlement, Defendant was released from any claims the United States had or may have for the "covered conduct" in exchange for $24.7 million. (Id. at 7.)   The settlement agreement further defined "covered conduct" as Defendant's alleged submission of false claims to Medicare for treatment of patients who did not meet the applicable eligibility criteria under the hospice benefit occurring during the period of January 1 2000 to September 1, 2008. (Id. at 7.)

Pursuant to the settlement agreement, Defendant also entered into a Corporate Integrity Agreement with the

---

[4] These specific facts related to the previous qui tam actions are taken from Defendant's motion.  Normally, the Court does not consider facts outside the original pleadings on a motion to dismiss.  However, the Court presents these facts here as they are freely available to the public, are undisputed by Relator, and are necessary for the Court's analysis of Defendant's facial challenge to the Court's subject matter jurisdiction See infra Analysis.I.

Department of Health and Human Services to establish a compliance program to prevent Defendant from submitting any future false claims to the Government. (Doc. 50 at 2.) Nevertheless, according to Relator, Defendant has not complied with its agreement and has since submitted further false claims to the Government. (Id.) Rather, Relator alleges, Defendant has pressured its staff with unrealistic sales targets and lucrative incentives to encourage admissions of patients not actually eligible for hospice care. (Id. ¶¶ 19-22.)

To support this claim, Relator identifies twenty-seven patients who are or were receiving Defendant's hospice care despite ineligibility. Specifically, Relator provides facts showing thirteen patients were admitted to hospice care despite the lack of necessary physician referrals and certifications of terminal illness, or exhibiting otherwise incomplete and incorrect documentation.[5] (Id. ¶¶ 23-37.)

---

[5] Before a Medicare patient may receive hospice care, his or her attending physician and the hospice care provider's medical director are required to each certify in writing at the beginning of the first ninety-day period "that the individual is terminally ill . . . based on the physician's or medical director's clinical judgment regarding the normal course of the individual's illness." 42 U.S.C. § 1395f(a)(7)(A)(i). At the beginning of a subsequent ninety or sixty-day period, the medical director or physician must recertify "that the individual is terminally ill based on such clinical judgment." 42 U.S.C. § 1395f(a)(7)(A)(ii). "Terminally ill" is defined as having

Relator also identifies, by their initials, seven patients whom are or were continuing to receive hospice services from Defendant for over one year. (Id. ¶ 38.) Relator also provides evidence of six patients whose recorded diagnoses were fraudulently altered by Defendant. (Id. ¶ 39.) Relator further provides one example of Defendant improperly drugging a patient so as to make the patient decline in health and falsely appear eligible for hospice care. (Id. ¶¶ 40-41.)

Lastly, Relator also provides five examples of patients who were eligible and properly receiving hospice care, but were then revoked by Defendant. (Id. ¶ 44.) The care associated with these patients—such as a hospital stay—cost more than what Medicare provided for their care and thus, according to Relator, Defendant revoked them from hospice care to avoid paying for their treatment. (Id.) Defendant apparently accomplished this by having the patients sign a blank revocation form and then back-dating it to appear as if the patient revoked Defendant's services prior to the date of the expensive care. (Id.) The patients are normally readmitted thereafter. (Id.)

---

a life expectancy of less than six months. 42 C.F.R. § 418.3.

On September 3, 2013, Relator filed an amended complaint dismissing his conspiracy and common law claims, but maintaining that Defendant violated the FCA and GMFCA by improperly admitting and recertifying patients who did not meet hospice criteria, as well as falsifying certain documents to support this fraudulent activity. (Doc. 50 ¶¶ 46-67.) Specifically, Relator asserts the following five claims: (1) Count One - False Claims Under 31 U.S.C. § 3729; (2) Count Two - False Claims under 31 U.S.C. § 3729;[6] (3) Count Three - False Statements for Submission of False Claims under 31 U.S.C. § 3729; (4) Count Four - Reverse False Claims under 31 U.S.C. § 3729(a)(1(G); and (5) Count Five - False Claims under O.C.G.A. § 49-4-168.1. (Id.) Defendant answered the amended complaint on October 7, 2013, and asserted a counterclaim for breach of duty of loyalty, alleging that Relator siphoned potential customers

---

[6] While it is not entirely clear, counts one and two of Relator's complaint appear to allege the same thing: that Defendant submitted, or caused to be submitted, false claims for repayment by the United States Government. Each of these counts arises under the same statute and is dependent on the same set of facts. Due to Relator's shotgun manner of pleading, it is not entirely clear to the Court why what appears to be one claim has been divided into two separate counts. However, because the Court ultimately determines that the amended complaint should be dismissed on other grounds, see infra Analysis.III, the Court need not address its concerns here. The Court may revisit this matter should the need arise after Relator has submitted his second amended complaint.

away from Defendant during his last month of employment. (Doc. 55.)

Defendant has now moved to dismiss Relator's amended complaint for failure to state a claim upon which relief can be granted because the claims are barred by res judicata and/or collateral estoppel (Doc. 57); for lack of subject matter jurisdiction because Relator's claims stem from information already publicly disclosed (Doc. 58); and because the complaint fails to plead the alleged fraud with particularity as required by Fed. R. Civ. P. 9(b) (Doc. 56). Relator has responded in opposition to each of these motions. (Doc. 59; Doc. 60; Doc. 61.) Relator has also moved to dismiss Defendant's counterclaim for failure to state a claim upon which relief can be granted, arguing that the allegation is unsupported by sufficient factual allegations and is impermissibly retaliatory. (Doc. 62.) Defendant has responded in opposition. (Doc. 72.) The Court will address each of these claims in this order.

**ANALYSIS**

I.  12(b)(1) LACK OF SUBJECT MATTER JURISDICTION

A.  Applicable Law

Defendant has filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. 58), arguing that Relator's allegations are based on public information, and

thus his claims are precluded by the FCA's public disclosure bar. The parties disagree on which version of 31 U.S.C. 3730(e)(4) applies to Relator's claims. The alleged public information, while revealed in January of 2009, includes allegations of Defendant's conduct only from January 1, 2000 to September 1, 2008. (Doc. 58, Attach. 7 at 4.) Relator's amended complaint includes allegations of Defendant's conduct from 2007-2013. (Doc. 50.)

As stated earlier, Relator left Defendant's employment on September 9, 2010. (Doc. 55 at 7.) Roughly six months earlier, on March 23, 2010, the President signed into law the Patient Protection and Affordable Care Act ("PPACA"), which resulted in an amendment to the language of § 3730(e)(4). (Doc. 64 at 2 n.1.) Also, Relator initially filed this action roughly two months after the PPACA's passage. (Doc. 1.) Accordingly, before the Court addresses the merits of Defendant's motion, it must determine which version of the statute is applicable to the claims at hand.

The PPACA legislation is silent as to whether the statute applies retroactively, and some district courts have held that claims filed well after the passage of the PPACA should be evaluated pursuant to the statute's amended language. See, e.g., United States ex rel. Sanchez v.

Abuabara, 2012 WL 1999527, at *2 n.1 (S.D. Fla. Aug. 16, 2013) (unpublished) (amended language applied where suit was filed "many months after" PPACA's passage and all parties consented to use of amended language).   In Hughes Aircraft Co. v. U.S. ex rel. Schumer, however, the Supreme Court declined to apply the FCA's 1986 amendments to cases in which the underlying conduct had occurred prior to the amendment.   520 U.S. 939, 946 (1997) (noting that "[t]he principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal appeal") (internal citations omitted).   While the Eleventh Circuit has not addressed an instance wherein a complaint and its underlying facts straddle the date of when public disclosure bar was amended, the Court finds the principle outlined in Hughes the most reasonable approach.   Where Relator's claims are based on facts after the passage of the PPACA, the new language will apply.   Where the conduct precedes the PPACA, the previous language will apply.[7]   See

---

[7] Georgia's Medicaid FCA public disclosure bar exhibits identical language to that of the FCA, and has done so both before and after the PPACA's passage.   See O.C.G.A. 49-4-168.2(j)(2)(2008);   O.C.G.A.   49-4-168.2(l)(1-2).   In addition, both parties agree that the FCA governs Relator's claims.   (See Doc. 50 ¶ 1; Doc. 58, Attach. 1 at 3 n.1) Accordingly, the Court's analysis applies equally to both Relator's claims under federal and Georgia law.

United States ex rel. Osheroff v. Humana, Inc., 2012 WL 4479072, at *4 n.8 (S.D. Fla. Sept. 28, 2012) (unpublished) (applying previous version of FCA's public disclosure bar to claims submitted before amendment and amended version to claims submitted thereafter).

B.   The Public Disclosure Bar

Defendant has moved for dismissal pursuant to 12(b)(1), as challenges based on the FCA's public disclosure bar are considered jurisdictional. See, e.g., Rockwell Int'l Corp. v. United States, 549 U.S. 457, 467 (2007) (holding that § 3730(e)(4) is jurisdictional). The Eleventh Circuit has recognized that a motion to dismiss for lack of subject matter jurisdiction may be based on either a facial or factual challenge to the complaint. See McElmurray, 501 F.3d at 1251. A factual challenge is made irrespective of the pleadings and the Court may consider testimony and other evidence to determine its potential jurisdiction. Id. A facial challenge, on the other hand, affords a plaintiff safeguards similar to those accompanying a Rule 12(b)(6) motion to dismiss for failure to state a claim. Id. That is, the Court will consider as true the factual allegations contained in a plaintiff's complaint. Id. Because this motion is made prior to

discovery, the Court construes it as a facial challenge to subject matter jurisdiction.

### 1.   Claims Governed by Old Statute

Relator alleges facts in his amended complaint that show, prior to the PPACA's passage, Defendant fraudulently admitted eighteen ineligible patients to hospice care. (Doc. 50 ¶¶ 25, 27, 30, 32, 34, 38-39.) He has also offered five examples of patients who were eligible for hospice care and were improperly revoked.[8] (Id. ¶ 44.) For the period of time in which these patients were admitted, the public disclosure bar stated:

> No court shall have jurisdiction over an [FCA qui tam action] based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless . . . the person bringing the action is an original source of the information.

31 U.S.C. § 3730(e)(4)(A) (2008). The Eleventh Circuit dictates a three-step inquiry under the public disclosure

---

[8] It is not entirely clear how Relator believes these revocations violate the FCA. Relator's shotgun manner of pleading makes it difficult to distinguish which counts are actually dependent on which facts. (See, e.g., id. ¶ 61.) It seems likely that these claims are factually independent from any alleged improper admissions or re-certifications of ineligible patients. See infra Analysis.II. In the interest of caution, however, the Court assumes these claims are related and will determine whether the public disclosure bar precludes their inclusion in this suit as they occurred prior to the passage of the PPACA.

bar: "(1) have the allegations made by the plaintiff been publicly disclosed; (2) if so, is the disclosed information the basis of the plaintiff's suit; (3) if yes, is plaintiff an 'original source' of that information." McElmurray v. Consol. Gov't of Augusta-Richmond Cnty., 501 F.3d 1244, 1252 (11th Cir. 2007) (quoting Battle v. Bd. of Regents, 468 F.3d 755, 762 (11th Cir. 2006)). During the time in question, the FCA also defined "original source" as "an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action." 31 U.S.C. § 3730(e)(4)(B)(2008).

In support of its motion, Defendant has included the complaints, intervention notices, dismissals, and the Government's press release announcing the settlement of both the Rice and Romeo lawsuits. (Doc. 58, Attachs. 2-9.) These filings, which have been unsealed, are clearly themselves public disclosures. McElmurray, 501 F.3d at 1252 (finding documents filed with the court public disclosures under FCA). Indeed, Relator does not appear to contest that these documents are public disclosures, and admits he was familiar with the previous lawsuits. (Doc. 61 at 4.) Accordingly, the first prong of the public disclosure inquiry is satisfied.

With regard to the second prong, the bar operates to preclude only those claims that are "based upon" information publicly disclosed. <u>Cooper v. Blue Cross & Blue Shield of Fla., Inc.</u>, 19 F.3d 562, 567 (11th Cir. 1994). The Eleventh Circuit has taken a broad reading of the language, holding that "based upon" means "supported by," such that the FCA precludes "suits based in any part on publicly disclosed information." <u>See</u> <u>id.</u> Using this broad definition, it is unsurprising that Relator's claims may be implicated by the FCA's public disclosure bar.

Defendant argues that Relator's allegations are "identical to the claims brought in the Rice Action and Romeo Action." (Doc. 58, Attach. 1 at 13.) Specifically, Defendant points out that both the Rice and Romeo actions, which were filed years before this lawsuit, alleged that Defendant improperly admitted and recertified patients for hospice care and falsified documents to support fraudulent claims submitted to the government. (<u>Id.</u> at 5-6.) The conduct in question allegedly took place from Jan. 1, 2000 through September 1, 2008. (<u>Id.</u>) Similarly, Defendant points out, Relator's amended complaint alleges that Defendant admitted and recertified ineligible hospice patients, falsified records and submitted fraudulent claims. (<u>Id.</u> at 13.) According to Defendant, because

allegations of its improper conduct had already been released to the public, Relator is precluded from asserting similar claims now. (Id.)

Relator admits his awareness of the prior actions and settlement. (Doc. 61 at 4.) However, knowledge of this prior conduct is not determinative in this case. The question before the Court is simply whether any of Relator's claims are supported by the previously alleged improper conduct occurring before September 1, 2008. See United States ex rel. Harris v. Lockheed Martin Corp., 905 F. Supp. 2d 1343, 1351 (N.D. Ga. 2012) ("[The public disclosure bar] operates to preclude only those claims based on the facts publicly disclosed." (citing McElmurray, 501 F.3d at 1252)).

Relator admits that some of the patients allegedly admitted or recertified for hospice care were first admitted prior to the effective date of the Rice and Romeo settlement. (Doc. 61 at 7.) Defendant argues that the facts surrounding these patients were thus disclosed by the prior qui tam cases and attendant settlement agreement, and thus cannot provide a basis for this action. (Doc. 71 at 15.) Relator responds that his claims stem only from the period of time after the effective date of the settlement

during which these patients stayed on hospice care despite being ineligible. (Doc. 61 at 7.)

However, Relator adopts and incorporates all the facts in his amended complaint to support each of his claims. (Doc. 50 ¶¶ 46, 51, 56, 61, 64.) Because the amended complaint includes references to improper admissions and recertifications prior to the effective date of the Rice and Romeo settlement agreement, the Court finds that such references are admittance that the claims are, at least in part, supported by these previously and publicly disclosed facts. See Cooper, 19 F.3d at 567 (holding that the FCA precludes suits based "in any part" on publicly disclosed information). Accordingly, the Court must determine whether Relator qualifies as an "original source" of these allegations.

Taking the allegations in Relator's amended complaint as true, the Court finds he has set forth a sufficient factual basis to support a finding that he may qualify as an original source. As stated earlier, an original source is "an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action." 31 U.S.C. § 3730(e)(4)(B)(2008). A relator need not be the original source from which the

publicly disclosed information originates, but must demonstrate direct and independent knowledge of the facts upon which his claim is based. <u>Battle</u>, 468 F.3d at 762. In addition, an employee with personal, firsthand knowledge of the information supporting his allegations may qualify for the original source exception. <u>See</u> <u>Saldivar</u>, 906 F. Supp. 2d at 1275.

Such appears to be the case here. Relator was employed by Defendant for five years and alleges intimate knowledge of Defendant's internal affairs. (Doc. 50 ¶¶ 3-4.) Specifically, Relator alleges personal knowledge of the facts contained within his complaint. (Doc. 61 at 2-3.) In addition, Defendant admits in one of its replies that Relator "had 'firsthand' access to the very records he needed to offer evidence of the purported fraudulent behavior."[9] (Doc. 69 at 4.) The Court also notes that Defendant remained employed in this privileged position for five months after the passage of the PPACA. (Doc. 55 at 7.) Accordingly, taking the allegations in his amended complaint as true, the Court finds that Relator has pled

---

[9] Defendant makes this statement as part of his argument that Relator failed to plead fraud with particularity. <u>See</u> <u>infra</u> Analysis.III. The Court agrees with Defendant on that point. <u>Id.</u> Nonetheless, the statement still serves to negate Defendant's argument that Relator cannot be an original source of the information upon which his claims rely.

sufficient facts to establish that he is an original source

of the information implicated by the FCA's old public

disclosure bar.[10]

## 2. *Claims Governed by New Statute*

Nine of Relator's alleged improper patient admissions

occurred after the passage of the PPACA, and are thus

governed by the new language of the FCA. The current

language of the FCA's disclosure bar reads:

> The court shall dismiss an action or claim under
> this section, unless opposed by the Government,
> if substantially the same allegations or
> transactions as alleged in the action or claim
> were publicly disclosed in a Federal criminal,
> civil, or administrative hearing in which the
> Government or its agent is a party; in a
> congressional, Government Accountability Office,
> or other Federal report, hearing, audit, or
> investigation; or from the news media, unless the
> action is brought by the Attorney General or the
> person bringing the action is an original source
> of the information.

---

[10] The Court's analysis is admittedly complicated by the fact that Relator has not specifically linked the alleged conduct with actual claims submitted to the government. See *infra* Analysis.III. Accordingly, it is quite difficult to discern which claims, if any, may be precluded. If discovery reveals there are claims covered by the previous language of the public disclosure bar, of which Relator does not have direct and independent knowledge, Defendant may reassert its arguments at summary judgment. Eaton v. Dorchester Dev., Inc., 692 F.2d 727, 733-34 (11th Cir. 1982) ("Where the jurisdictional issues are intertwined with the substantive merits, the jurisdictional issues should be referred to the merits, for it is impossible to decide one without the other." (internal quotation marks and citation omitted)).

31 U.S.C. 3730(e)(4)(A)(i-iii).[11]  The new definition of an

"original source" is an individual who "has knowledge that

is independent of and materially adds to the publicly

disclosed allegations or transactions, and who has

voluntarily provided the information to the Government

before filing an action under this section."   31 U.S.C.

3730(e)(4)(B).

Defendant does not make separate arguments regarding

Relator's claims, and accordingly makes the same argument

as discussed earlier with regard to allegations governed by

the revised language of the FCA.   That is to say, that

Relator's allegations are "identical to the claims brought

---

[11] The revised language forms the basis of Relator's Motion
to Strike Defendant's motion to dismiss.  (Doc. 64.)   In
addition to being generally more permissive of claims
brought under the FCA, Relator argues that the statute's
current language strips the public disclosure bar of its
jurisdictional nature.   (Id. at 4.)   Specifically,
Defendant contends that although the statute still states
that the Court "shall dismiss" an action based on public
information, the Government's ability to object to
dismissal renders the public disclosure bar an affirmative
defense rather than a jurisdictional question.   (Id.)
However, because the Court finds no claim arising from
facts occurring after the PPACA's passage in which the
public disclosure bar would be implicated, Relator's motion
is **DISMISSED AS MOOT**.   Should facts contrary to this
conclusion reveal themselves during discovery, the Court
will revisit this question at summary judgment.   See
Lawrence v. Dunbar, 919 F.2d 1525, 1531 (11th Cir. 1990)
([F]ederal claims should not be dismissed on motion for
lack of subject matter jurisdiction when that determination
is intermeshed with the merits of the claim and when there
is a dispute as to a material fact.).

in the Rice Action and Romeo Action." (Doc. 58, Attach. 1 at 13.) Again, Defendant argues that because allegations of its improper conduct had already been released to the public in the previous actions and settlement, Relator is precluded from asserting similar claims now. (Id.)

While the claims address similar acts, however, the facts underlying them are wholly distinct from one another. As before, the question before the Court is simply whether any of Relator's claims are supported by any previously alleged improper conduct occurring before September 1, 2008. See Harris, 905 F. Supp. 2d at 1351 ("[The public disclosure bar] operates to preclude only those claims based on the facts publicly disclosed." (citing McElmurray, 501 F.3d at 1252)). Here, the Court concludes that they are not.

The Court finds that Relator's alleged facts concerning these nine post-PPACA claims occurred outside the scope of the Rice and Romeo actions and their attendant settlement. Although Defendant points out that Relator accuses Defendant of "continuing" its fraudulent practices after the settlement (Doc. 71 at 9.), the Court finds Defendant's characterization of the statement misleading. Relator does not appear to allege that Defendant's conduct represents one indivisible violation of the FCA, but rather

that the acts he observed were structurally similar to those that occurred previously. Defendant's theory would effectively allow any defendant in a FCA case to perpetually commit subsequent FCA violations with impunity so long as it limited its actions to the same general conduct for which it was first sued. Despite their similar legal nature, the material transactions that give rise to Relator's claims are distinct and separate from those revealed by the prior Rice and Romeo actions and subsequent settlement agreement.

Relator's allegations also include more than mere minor differences or new evidence to support previously alleged circumstances, as Defendant argues. (Doc. 71 at 12-14.) Defendant cites numerous decisions, none of which are binding on this Court, for its proposition that "relators cannot save their complaints from the public disclosure bar simply by citing additional examples of allegations and transactions that had been publicly disclosed." (Id. at 14.) In each case, however, a relator is seeking to tack on new or additional claims to an already alleged foundation of facts. See, e.g., Fed. Recovery Servs. v. United States, 72 F.3d 447, 451 (5th Cir. 1995) (public disclosure bar precluded other claims partially based on same underlying factual matters); United

States ex rel. Feldstein v. Organon, Inc., 365 F. App'x
738, 741-42 (3d Cir. 2010) (suit under new legal theory
precluded because underlying allegations of fraud were
previously disclosed). Such is not the case here.

Again, although the legal implications may be
identical, none of the conduct giving rise to the
allegations surrounding these nine patients has been
previously publicly disclosed.[12]  Accordingly, the prior
existence of these disclosures does not bar Relator's
claims under 31 U.S.C. § 3730(e)(4)(A).  Because the Court
finds these claims entirely distinct from any conduct
alleged in the publicly disclosed documents, it need not
consider whether Relator is an original source under the
new language of the public disclosure bar.  See Cooper, 19
F.3d at 566 ("A court reaches the original source question
only if it finds the plaintiff's suit is based on

---

[12] While Relator expressly indicates that his claims are
based solely on conduct occurring after the prior
settlement's effective date (Doc. 61 at 5-6), he does
mention that his reverse fraud claim has not been
previously alleged (id. at 7-8).  To the extent that there
may be any confusion on the matter, the Court wishes to
make it clear that Relator may not support any of his
claims, including his reverse false claim, with facts
previously disclosed to the public for which he is not an
original source.  See Battle, 468 F.3d at 762 (suits based
in any part on publicly disclosed information are
precluded).

information publically disclosed." (<u>citing</u> <u>Williams ex rel.</u>
<u>NEC Corp.</u>, 931 F.2d 1493, 1500 (11th Cir. 1991))).

II.   <u>12(b)(6) RES JUDICATA AND COLLATERAL ESTOPPEL</u>

   A.   <u>Standard</u>

   Federal Rule of Civil Procedure 8(a)(2) requires a
complaint to contain "a short and plain statement of the
claim showing that the pleader is entitled to relief."
"[T]he pleading standard Rule 8 announces does not require
'detailed factual allegations,' but it demands more than an
unadorned, the-defendant-unlawfully-harmed-me accusation."
<u>Aschroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (<u>quoting</u> <u>Bell</u>
<u>Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)).[13] "A
pleading that offers labels and conclusions or a formulaic
recitation of the elements of a cause of action will not
do." <u>Iqbal</u>, 556 U.S. at 678 (internal quotations omitted).
"Nor does a complaint suffice if it tenders naked
assertions devoid of further factual enhancement." <u>Id.</u>

   When the Court considers a motion to dismiss, it
accepts the well-pleaded facts in the complaint as true.
<u>Sinaltrainal v. Coca-Cola Co.</u>, 578 F.3d 1252, 1260 (11th

---

[13] <u>Iqbal</u> makes clear that <u>Twombly</u> has been the controlling
standard on the interpretation of Federal Rule of Civil
Procedure 8 in all cases since it was decided. <u>Iqbal</u>, 556
U.S. at 684 ("Though <u>Twombly</u> determined the sufficiency of
a complaint sounding in antitrust, the decision was based
on our interpretation and application of Rule 8 . . .
[that] in turn governs the pleading standard in all civil
actions and proceedings in the United States district
courts." (internal quotations and citations omitted)).

Cir. 2009). However, this Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678. Moreover, "unwarranted deductions of fact in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations." Sinaltrainal, 578 F.3d at 1268. That is, "[t]he rule 'does not impose a probability requirement at the pleading stage,' but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1295-96 (11th Cir. 2007) (quoting Twombly, 550 U.S. at 545). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. As such, a district court may "insist upon some specificity in [the] pleading before allowing a potentially massive factual controversy to proceed." Id. at 558.

B.  Res Judicata and Collateral Estoppel

Defendant contends that "the core" of Relator's complaint is his allegation that Defendant admitted or recertified ineligible patients for hospice care. (Doc. 57, Attach. 1 at 1.)  As stated above, Defendant settled with the Government any and all potential claims stemming from this alleged conduct prior to September 1, 2008.

(Doc. 57, Attach. 7 at 4.)    Specifically, the settlement

agreement from the Rice and Romeo Actions states that

> conditioned upon the Defendants' full payment of
> the Settlement Amount, the United States (on
> behalf of itself, its officers, agents, agencies,
> and departments) agrees to release the Defendants
> together with their current and former parent
> corporations; shareholders; direct and indirect
> subsidiaries; brother or sister corporations;
> divisions; current or former owners; and
> officers, directors, and affiliates, and the
> successors and assigns of any of them from any
> civil or administrative monetary claim the United
> States has or may have for the Covered Conduct
> under the False Claims Act, 31 U.S.C. §§3729-
> 3733.

(Doc. 58, Attach. 8 at 5-6.)    "Covered Conduct" involves

allegations that Defendant "submitted reimbursement claims

to Medicare for treatment of certain patients for hospice

care who did not meet the applicable eligibility criteria

under the hospice benefit" during the period from January

1, 2000, to September 1, 2008.    (Id. at 4.)    Accordingly,

Defendant argues that the doctrines of res judicata and/or

collateral estoppel should bar Relator's present claims.

(Doc. 57, Attach. 1 at 7.)

Relator does not contest that the settlement agreement

bars the Relators from bringing claims based on Defendant's

admission or recertification of patients from January 1,

2000 to September 1, 2008.    (Doc. 60 at 3.)    The claims

arising after September 1, 2008, however, are not covered

by the settlement agreement because such claims were never litigated. Accordingly, Relator argues, the doctrines of res judicata or collateral estoppel should not apply to these claims. The Court agrees. (Id.)

Despite their mutual agreement that claims covered by the settlement agreement are inappropriate for this action, neither party identifies any specific allegation to be struck. This is perhaps because Relator has not identified any specific claims attached to the underlying conduct he alleges is improper. See infra Analysis.III. The Court is able to identify six patients first admitted prior to the settlement agreement's effective date. (Doc. 50 ¶¶ 32, 34, 39.) However, the Court is currently uncertain as to how Relator may attempt to link these patients to any potentially impermissible claims. Accordingly, those allegations will not be struck at this time. The Court may, however, revisit this issue once Relator files his second amended complaint. See infra Analysis.III.

Relator does argue that one of his claims, a reverse false claim under 31 U.S.C. §3729(a)(1)(G), is not precluded by the settlement agreement because it has never been litigated before. (Doc. 60 at 3.) Defendant responds that Relator has incorporated his allegations of improper admissions and re-certifications in each count of his

complaint, such that even this new claim is based on the same conduct covered by the settlement. (Doc. 70 at 5.) Relator states broadly that the "fraudulent schemes" described in his amended complaint aided Defendant in avoiding an obligation to pay or transmit money to the United States government. (Doc. 50 ¶¶ 61-63.) The Court agrees that Relator's shotgun manner of pleading makes this particular claim difficult to follow. While it appears clear that Relator is arguing that Defendant was obligated to pay back the Medicare funds it received for patients that were actually ineligible for hospice care (Id. ¶ 62.), it remains unclear as to which specific allegations he bases this theory upon.

In any case, to the extent that Relator's claim relies on proof of admissions or recertifications of ineligible hospice patients prior to September 1, 2008, Defendant's motion should be granted. As stated before, the Government released Defendant from all claims it "has or may have for the Covered Conduct under False Claims Act, 31 U.S.C. §§ 3729-3733." (Doc. 57, Attach. 8 at 5.) Accordingly, Relator may not base new legal theories on the same conduct underlying the previous settlement. However, to the extent that the reverse false claim is not dependent on such facts, it is not included in the Covered Conduct of the

settlement agreement. Should discovery reveal that the facts underlying this claim—or any other claim—are covered by the settlement agreement, Defendant may reassert its arguments at summary judgment. To the extent that Relator's claims exist independently of the settlement agreement, however, Defendant's motion must be denied.

## III. RULE 9(B) FRAUD PARTICULARITY STANDARD

### A. Standard

The heightened pleading standard of Federal Rule of Civil Procedure 9(b) applies to causes of actions brought under the FCA.[14] Hopper v. Solvay Pharm., Inc., 588 F.3d 1318, 1324 (11th Cir. 2009). Rule 9(b) states that "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Despite the heightened standard, however, the purpose of Rule 9(b) remains that a complaint must provide the defendant with "enough information to

---

[14] As stated above, Relator's amended complaint includes four counts under the federal FCA and one count under the Georgia Medicaid False Claims Act. (Doc. 50 ¶ 61-63.) Under Georgia law, pleading fraud is subject to the same heightened pleading standards as Rule 9(b). O.C.G.A. § 9-11-9(b); see also Cont'l Inv. Corp. v. Cherry, 124, Ga. App. 863, 865 (Ga. App. 1971). Accordingly, the Court's analysis applies to Relator's claims brought under both acts.

formulate a defense to the charges." United States ex rel. Clausen v. Lab. Corp. of Am., Inc., 290 F.3d 1301, 1313 n. 24 (11th Cir. 2002). The Eleventh Circuit has emphasized that "[t]he application of Rule 9(b) . . . 'must not abrogate the concept of notice pleading.' " Tello v. Dean Witter Reynolds, Inc., 494 F.3d 956, 972 (11th Cir. 2007) (quoting Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1202 (11th Cir. 2001)). Furthermore, Rule 9(b)'s standard "should not be conflated with that used on a summary judgment motion." United States ex rel. Rogers v. Azmat, 2011 WL 10935176, at *3 (S.D. Ga. May 17, 2011) (unpublished).

Rule 9(b) serves to ensure that a FCA claim has "some indicia of reliability . . . to support the allegation of an actual false claim for payment being made to the Government." Clausen, 290 F.3d at 1311. This is because "[t]he [FCA] does not create liability merely for a health care provider's disregard of Government regulations or improper internal policies unless, as a result of such acts, the provider knowingly asks the Government to pay amounts it does not owe." Id. As a result, an FCA complaint must plead not only the "who, what, where, when, and how of improper practices," but also the "who, what, where, when, and how of fraudulent submissions to the

government." <u>Corsello v. Lincare, Inc.</u>, 428 F.3d 1008, 1014 (11th Cir. 2005). The question of whether a complaint satisfies Rule 9(b) is decided on a case-by-case basis, but even detailed portrayals of fraudulent schemes followed by conclusions that false claims must have been submitted is insufficient. <u>See United States ex rel. Atkins v. McInteer</u>, 470 F.3d 1350, 1358 (11th Cir. 2006).

B.    <u>The Pleading Standard</u>

Defendant argues that Relator has failed to plead with particularity both any improper conduct on its part as well as the submission of any claim. (Doc. 56, Attach. 1 at 2.) With regard to its alleged fraudulent conduct, Defendant first contends that the complaint is too vague because it does not name the principals, agents, or employees allegedly involved in the schemes, but rather refers to acts done by "SouthernCare" and refers to various employees by their titles.[15] (Doc. 56, Attach. 1 at 7-8, 10-12, 14, 16, 18). Defendant also argues that Relator's descriptions of the allegedly fraudulently altered documents are insufficient because he does not identify them by title, date, or author. (<u>Id.</u> at 10, 17, 20.) In addition, Defendant argues that Relator has provided insufficient

---

[15] The Court notes that Relator does, in fact, identify acts done by at least three specifically named employees. (Doc. 50 ¶¶ 20-21, 39.)

details concerning the circumstances of the allegedly incriminating statements—such as to whom the statements were directed, as well as specific dates of the statements—made by Defendant's employees. (Id. at 7-9.) Finally, Defendant contends that the mechanics of the alleged schemes are insufficiently described (id. at 7-9, 13, 17-18) and that the evidence is insufficient to show a "widespread, systematic pattern and practice" as alleged in the amended complaint (id. at 5-7, 13-14).

The Court finds Defendants' arguments on this matter without merit. Relator's amended complaint provides all of the necessary indicia of reliability with regard to improper acts committed by Defendant, and provides allegations sufficiently detailed to satisfy Rule 9(b). Specifically, the amended complaint alleges the who—Defendant and its employees (Doc. 50 ¶ 23); the what—improper admissions and recertifications of ineligible patients for hospice services, improper revocations of eligible patients, and improper alterations of patient records (id. ¶¶ 23, 42-45); the when—after the effective date of Defendant's settlement with the Government on September 1, 2008 (id. ¶¶ 24, 50, 54-55, 58-59); the where—within the Southern District of Georgia (id. ¶ 2); and the details of Defendant's misconduct—admitting patients

ineligible for hospice care due to lack of physician referrals and fraudulent diagnoses (id. ¶¶ 23-36), altering patient diagnoses to make them appear eligible for hospice care (id. ¶ 39), drugging patients to give the appearance of declining health (id. ¶ 40), and back-dating revocations for legitimate hospice patients to avoid paying for palliative care (id. ¶¶ 42-45). The level of detail Defendant demands in its motion is quite simply unnecessary at this stage. Relator's forty-five page, sixty-seven paragraph amended complaint includes descriptive factual allegations of each of the alleged acts. Accordingly, the Court finds the amended complaint sufficient to put Defendant on notice of the particular acts Relator alleges were in perpetration of fraud.

More convincing, however, are Defendant's arguments that Relator has failed to provide the necessary link between the alleged fraudulent conduct and the submission of any claim to the government. (Doc. 56, Attach. 1 at 4.) Although the amended complaint alleges that Defendant engaged in fraudulent alterations and improper conduct to prepare claims for submission for government payment, Relator stops short of ever alleging specific facts tying the alleged improper conduct with such a submission. The closest Relator comes to such an allegation is describing

the general process Defendant takes in submitting claims for reimbursement to the Government. (Doc. 50 ¶¶ 14-16.) However, such a general statement is insufficient to demonstrate that Defendant submitted any false claim to the government. See Clausen, 290 F.3d at 1306 (demonstrating how claim would be submitted did not prove false claim actually was submitted). Accordingly, Relator's amended complaint is deficient for lack of specificity with regard to this second step of alleging a claim under the FCA.[16] See Hopper, 588 F.3d at 1326 (filing of false claim with government cannot be shown by inference).

---

[16] A reverse false claim may survive without a plaintiff establishing the submission of a false claim. See United States ex rel. Matheny v. Medco Health Solutions, Inc., 671 F.3d 1217, 1225 n.12 (11th Cir. 2012) ("[F]or a reverse false claim action, presentment of a false claim is not at issue and presentment of a false statement is not required by the statute.") Further, the Eleventh Circuit has indicated that a claim of false statements for the purpose of submitting a false claim—count three of Relator's amended complaint—may be conceivably supported without evidence of submission of an actual false claim. Rather, for such a claim, "general allegations of improper government payments to third parties, supported by factual or statistical evidence to strengthen the inference of fraud . . . could satisfy the particularity requirements of Rule 9(b)." Hopper, 588 at 1327. However, Defendant's alleged "obligation" to pay in this case is dependent on money improperly paid out by Medicare. (Doc. 50 ¶ 62.) Relator has not alleged any facts concerning payment of false claims, let alone enough to sufficiently strengthen its general allegations. Accordingly, Relator has failed to plead with particularity both of these claims in the same manner as his other claims.

In his response, Relator requests that he be given leave to amend his complaint a second time should the Court find his amended complaint deficient. (Doc. 59 at 2-3.) Relator states that he is able to plead facts indicating that the patients identified in his complaint were in fact the subject of fraudulent bills submitted to the government. (Doc. 59 at 2, 8.) In its reply, Defendant argues the Court should deny Relator's request because any further amendment to the complaint would be futile. (Doc. 69 at 11.) Defendant points out that Relator has already amended his complaint once before, and contends that he was already on notice of his pleading's deficiencies by virtue of Defendant's original response.[17] (Id. at 12.)

The Court does not agree that allowing a second amended complaint would be futile at this stage. The Court had made no judgment regarding the adequacy of Relator's pleading when he filed his amended complaint. Further, Relator claims that he is able to provide the specific details necessary to cure the complaint's deficiencies.

---

[17] Defendant also argues that Relator makes his request to amend in bad faith as a dilatory tactic. However, the Court finds no reason to suspect that Relator is attempting to delay this proceeding simply by requesting a chance to amend his complaint. The facts of cases brought under the FCA are normally complex and extensions of time for pleadings and motions have previously been granted to both parties at various points in this litigation. (See, e.g., Doc. 44.)

Accordingly, Relator shall have **fourteen days** from the date of this order to file a second amended complaint that specifically refers to whether any of the alleged improper acts actually resulted in false claims being submitted to the government.[18] Such allegations must be specific enough to demonstrate an "indicia of reliability" that such claims were actually submitted. <u>Clausen</u>, 290 F.3d at 1311.[19]

IV. <u>DEFENDANT'S COUNTERCLAIM</u>

As stated earlier, Defendant has filed a counterclaim against Relator for breach of duty of loyalty. (Doc. 55.) Specifically, Defendant claims that Relator lured away referral sources and patients for his future employer during his last month of employment with Defendant. (<u>Id.</u> at 8.) Relator has moved to dismiss Defendant's counterclaim pursuant to 12(b)(6) for failure to state a claim. (Doc. 62.) In his motion, Relator argues that Defendant has not shown that Relator owed it any legally

---

[18] Both parties should also be aware that the Court will not accept any filing—whether an amended complaint, an answer, motion, brief, response, or reply—that incorporates by reference any factual allegation or argument contained in any documents already filed before this Court. Any further filings must be stand-alone that independently contain all the factual allegations and documents that the filing party wishes the Court to consider.

[19] Because Relator is given leave to file a second amended complaint, the Court **DEFERS** ruling on whether the facts alleged are sufficient to demonstrate a "widespread, systematic pattern and practice" of fraudulent activity. (Doc. 50 ¶ 49.)

cognizable duty, nor that he breached any such duty, or that he otherwise harmed Defendant in any way. (Doc. 63 at 1.)

As stated before, Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." However, "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Iqbal, 556 U.S. at 678 (internal quotations omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." Id.

As stated earlier, when the Court considers a motion to dismiss, it accepts the well-pleaded facts in the complaint as true. Sinaltrainal, 578 F.3d at 1260. Accordingly, the Court accepts Defendant's allegation that it experienced a dramatic reduction in its hospice admissions in the local area where Relator worked during his final month of employment. (Doc. 55 ¶ 22.) The Court also takes as true that Relator stated he was leaving to work for a pharmacy company, but in fact went to work for Defendant's competitor. (Id. ¶ 21.) However, the Court

does not have to accept as true that the cause of this drop was due to Relator aiding Defendant's competitor. <u>See</u> <u>Iqbal</u>, 556 U.S. at 678 (a court is "not bound to accept as true a legal conclusion couched as a factual allegation").

Defendant has pled no facts whatsoever concerning Relator's conduct, let alone anything to validate its suspicion that he improperly aided Defendant's competitor while still in Defendant's employment. Defendant merely states that it experienced a drop in admissions and, due to the timing of the occurrence, assumes Relator is to blame. (Doc. 55 ¶ 23.) Accordingly, the Court finds that Defendant has not pled sufficient facts to bring its conclusory allegation above a mere speculative level.

As a result, the Court need not address whether Relator owed any duty, fiduciary or otherwise, to Defendant. Defendant has failed to plead sufficient facts demonstrating that Relator harmed Defendant in any way. Such baseless claims are precisely the type of actions <u>Twombly</u> and <u>Iqbal</u> are meant to eliminate. Accordingly, Relator's motion must be granted and Defendant's counterclaim dismissed.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss for Failure to State a Claim (Doc. 57) is **GRANTED**

37

**IN PART** and **DENIED IN PART**. All Relator's claims relating to fraudulent admissions or recertifications of ineligible hospice patients prior to September 1, 2008 are hereby **DISMISSED**. Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. 58) is **DENIED**. Defendant's Motion to Dismiss for Failure to Plead Fraud with Particularity (Doc. 56) is **GRANTED**. However, Relator shall have **fourteen days** to submit an amended complaint correcting the deficiencies identified in this order. Relator is on **NOTICE** that failure to do so will result in dismissal of this case. Relator's Motion to Dismiss Counterclaim (Doc. 62) is **GRANTED**.

SO ORDERED this *29th* day of September 2014.

_____
WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA