UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

SAVANNAH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and STATE OF GEORGIA ex rel. CHAD WILLIS,<br><br>Plaintiffs,<br><br>v.<br><br>SOUTHERNCARE, INC.,<br><br>Defendant. | Case No. CV410-124 |

## ORDER

Defendant SouthernCare, Inc. ("SouthernCare") moves to stay discovery pending the resolution of its motion to dismiss plaintiffs' second amended complaint in this *qui tam* action under the False Claims Act ("FCA").[1] (Doc. 97.) Plaintiffs oppose the motion. (Doc. 99.) For the following reasons, defendant's motion is denied.

The Court granted SouthernCare's earlier motion to dismiss plaintiffs' complaint for failure to plead fraud with particularity under Fed. R. Civ. P. 9(b), but it permitted plaintiffs to submit a second amended complaint to cure the deficiency. (Doc. 89 (order); doc. 56 (first motion to dismiss).) Specifically, the Court stated:

---

[1] The motion to dismiss (doc. 93) is not referred to the undersigned.

> Although the amended complaint alleges that Defendant engaged in fraudulent alterations and improper conduct to prepare claims for submission for government payment, Relator stops short of ever alleging specific facts tying the alleged improper conduct with such a submission. The closest Relator comes to such an allegation is describing the general process Defendant takes in submitting claims for reimbursement to the Government. (Doc. 50 ¶ 14-16.) However, such a general statement is insufficient to demonstrate that Defendant submitted any false claim to the government. *See* [*United States ex rel. Clauson v. Laboratory Corp., Inc.*], 290 F.3d [1301, 1306 (11th Cir. 2002)] (demonstrating how claim would be submitted did not prove false claim actually was submitted). Accordingly, Relator's amended complaint is deficient for lack of specificity with regard to this second step of alleging a claim under the FCA. *See Hopper* [*v. Solvay Pharm., Inc.*], 588 F.3d [1318, 1326 (11th Cir. 2009)] (filing of false claim with government cannot be shown by inference).

(Doc. 89 at 32-33 (footnote omitted).) In SouthernCare's present motion to dismiss, it insists that plaintiffs' second amended complaint fails to cure this deficiency. (Doc. 93.) It thus contends that a stay of discovery should be granted because a favorable ruling on its motion to dismiss will substantially limit the claims against it and would spare the parties needless expense. (Doc. 97 at 3-5.)

Plaintiffs respond that they have fixed the complaint, so a stay of discovery is inappropriate. (Doc. 99 at 2.) Furthermore, this case has been pending for over 54 months, largely due to the United States' delay in determining whether it would intervene (it has declined (doc.

2

31)), and another stay would further prejudice plaintiffs' ability to gather discovery relevant to the applicable time period. (*Id.* at 3-4.)

A brief review of defendant's motion to dismiss (doc. 93) suggests that while it is not insubstantial, it is unlikely to be case dispositive. *Arriaga-Zacarias v. Lewis Taylor Farms, Inc.*, 2008 WL 4544470 at *2 (M.D. Ga. Oct. 10, 2008) ("it may be helpful for the court to take a 'preliminary peek' at the merits of the dispositive motion to assess the likelihood that such motion will be granted"). Rather than merely describing the claims submission process, plaintiffs have added substantial factual averments stating that SouthernCare *in fact* submitted fraudulent claims to the government, as is required by Fed. R. Civ. P. 9(b) in FCA cases. *See Clausen*, 290 F.3d at 1311 ("The [FCA] does not create liability merely for a health care provider's disregard of Government regulations or improper internal policies unless, as a result of such acts, the provider knowingly asks the Government to pay amounts it does not owe."). Plaintiffs first explain, in detail, the process under which the allegedly false claims were filed:

> 21. From at least January 1, 2008, SouthernCare knowingly submitted or caused the submission of false claims to Medicare and created false records and statements to receive reimbursement from Medicare, through Palmetto, for hospice care.

> 22. During this time, SouthernCare falsely certified on claim forms submitted to Medicare that hospice care provided to Medicare recipients was "medically indicated and necessary for the health of the patient." SouthernCare created and submitted documentation falsely representing that certain Medicare recipients were terminally ill to Medicare, via Palmetto. However, many of these Medicare recipients were not eligible for hospice care paid for by Medicare because they did not have a prognosis of six months or less to live.
>
> 23. During the majority of the period at issue, SouthernCare's billing of Medicare claims -- through Palmetto using CMS Claim Form 1450 as described in Paragraphs 15-18 -- was performed at the SouthernCare corporate office in Birmingham, Alabama. Barbara Donahoo served as SouthernCare Billing Supervisor in Birmingham from 2009 to 2011. SouthernCare locations such as Vidalia, Georgia, forwarded patient claim information to Ms. Donahoo's office, where it was formulated by billing personnel and submitted monthly as described in Paragraph 18. Palmetto paid these claims based on SouthernCare's certification that the services in question were reasonable and medically necessary.

(Doc. 90 at 15-16.) Then, in a patient-by-patient factual narrative, plaintiffs explain that certain charts that SouthernCare provided to the United States show that SouthernCare submitted fraudulent Medicare claims as to at least 29 patients. (Doc. 90.) In one section, they explain in detail why 13 of those patients were not hospice-qualified, as Medicare requires, and then affirmatively state that SouthernCare submitted claims for those patients to Medicare. (*Id.* at 21-37.) "Each of these patients is a Medicare patient who was identified by Palmetto

4

as a patient whose hospice claims had been billed by SouthernCare and paid by the United States." (*Id.* at 21.) As to a fourteenth patient, plaintiffs state that they have Medicare Explanation of Benefits forms confirming that the United States had paid SouthernCare for unnecessary care that led to that patient's death. (*Id.* at 39-41.) Finally, under the FCA statement of claim sections, plaintiffs again reiterate that SouthernCare fraudulently billed the United States for the specific patients it described in the fact section of its complaint. (Doc. 90 at 47-48 ("SouthernCare billed the United States $350,000 [from March 1, 2009 through December 31, 2011] for the 29 patients whose charts were subjected to the medical review described in detail above."); *id.* at 51 ("As described in Paragraphs 30 to 43, including the 14 specific patient examples, in perpetrating and concealing its fraud SouthernCare was forced to create and use false certifications of terminal illness; false admission paperwork indicating fraudulent diagnoses; false patient care plans not calculated to cope with patients' actual needs and conditions; and other false records intended to support their fraudulent billing to the United States, all in violation of 42 U.S.C. §1395y and the Medicare regulations cited *supra.*").)

Plaintiffs' second amended complaint appears on preliminary

review to meet its Fed. R. Civ. P. 9(b) burden. *See Clausen*, 290 F.3d at 1313 n.24 (despite Rule 9(b)'s heightened pleading standard for fraud claims, the purpose of the rule remains that a plaintiff must provide defendant with "enough information to formulate a defense to the charges."). Accordingly, the Court doubts SouthernCare's assertion that its dismissal motion will be dispositive of plaintiffs' claims. The Court thus **DENIES** defendant's motion to stay discovery (doc. 97). *See Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997) (where no discovery is required and a motion to dismiss raises purely legal questions a stay *may* be warranted).

**SO ORDERED** this __5th__ day of December, 2014.

/s/ G.R. Smith
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA