# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
### SAVANNAH DIVISION

UNITED STATES OF AMERICA and )
STATE OF GEORGIA ex rel. CHAD )
WILLIS, )
            )
      Plaintiffs, )
v. )      Case No. CV410-124
            )
SOUTHERNCARE, INC., )
            )
      Defendant. )

## ORDER

In this *qui tam* False Claims Act case, non-party Simione Healthcare, Inc. and defendant SouthernCare, Inc. move to quash relator Chad Willis' subpoena to Simione that seeks records of its 2009-2013 Medicare compliance reviews of SouthernCare. Docs. 109 & 110. Willis believes that the subpoena is a proper attempt to obtain discovery essential to his claims. Doc. 114.

## I. BACKGROUND

Six years ago, SouthernCare settled claims that it unlawfully billed Medicare for hospice patients who did not meet hospice criteria. *See Rice v. Southerncare Inc.*, No. 2:05-cv-873, doc. 43 (N.D. Ala. Jan. 15, 2009)

("*Rice*"). It agreed with the Office of Inspector General ("OIG") to employ an Independent Review Organization ("IRO") for five years to ensure compliance with "the statutes, regulations, and written directives of Medicare, Medicaid, and all other Federal health care programs." Doc. 114-1 (SouthernCare-OIG "Corporate Integrity Agreement" (CIA)). Simione was that IRO. *See* doc. 114 at 3; doc. 109 at 3.

Simione "perform[ed] reviews to assist [SouthernCare] in assessing and evaluating the eligibility of hospice patients for the hospice benefit;" conducted an annual Medicare and Medicaid eligibility review; and periodically reviewed SouthernCare for "unallowable cost[s]." Doc. 114-1 at 9-12. It provided annual IRO reports to the OIG, and also performed whole-system reviews of SouthernCare as needed. Doc. 110-1 at 11. As an IRO, Simione claims it used "confidential and proprietary business tools, software and audit practices for efficient and effective analysis." Doc. 109 at 4.

Little more than a year after the Simione-SouthernCare IRO relationship began, Willis filed this action. *Compare* doc. 1 (filed May 18, 2010), *with* doc. 114-1 at 33-34 (executed on January 13, 2009). He asserts hospice-related violations of the False Claims Act similar to those

SouthernCare settled in *Rice*. *See, e.g.*, doc. 90 at 47-54. About four months into discovery, Willis served a subpoena on Simione seeking documents related to Simione's work as SouthernCare's IRO.[1] *See* doc. 110-1 at 4; doc. 107.[2] Simione and SouthernCare both moved separately to quash the subpoena. Docs. 109 & 110.

---

[1] The subpoena sought "all documents related to SouthernCare, Inc. from January 1, 2009 until the present, including:"

> 1. your entire SouthernCare, Inc. file(s)
> 2. all documents reflecting or relating to any review or audit of any kind (by whatever name you call it) you performed of SouthernCare, Inc. from January 1, [2]009 until the present;
> 3. all correspondence between you . . . and SouthernCare, Inc. . . . ;
> 4. any reports, memoranda, or other documents reflecting or memorializing the results of any review or aduit [sic] of any kind (by whatever name you call it) you performed of SouthernCare, Inc. from January 1, 2009 until the present;
> 5. all drafts of documents produced in response to 4., above;
> 6. all exhibits to documents produced in response to 4., above;
> 7. any copies of SouthernCare, Inc. documents in your possession, including but not limited to patient files, medical records, financial documents, training materials, compliance materials, corporate documents, and marketing materials.

Doc. 107-1 at 5-6.

[2] SouthernCare represents that the subpoena "requests documents that Relator previously requested from SouthernCare in his Requests for Production of Documents, dated January 28, 2015." Doc. 110-1 at 4. SouthernCare says it objected to the requests as overbroad, irrelevant, seeking privileged information, and for not leading to the discovery of admissible evidence, though neither it nor Willis reveals whether it produced anything in response. *Id.*

## III. ANALYSIS

Simione argues that the subpoena (1) requires it to disclose proprietary trade secrets and confidential business information; (2) attempts to use Simione as an unretained expert; (3) imposes an undue burden; and (4) seeks disclosure of protected patient information and privileged materials and communications. Doc. 109 at 1-2. SouthernCare first asserts that it has standing to contest the subpoena. Doc. 110-1 at 6. It then argues that Willis seeks to misuse the IRO reports, and that the subpoena (1) asks for SouthernCare's confidential commercial information, and (2) is an overbroad fishing expedition.[3] *Id.* at 8-10, 13-15.

Willis counters that the stipulated protective order in this case (doc. 105) obviates any concerns about trade secrets and confidential information; the subpoena seeks facts from Simione, not expert opinions; and Simione has not established that the subpoena is unduly burdensome. Doc. 114 at 6-15.

---

[3] SouthernCare also parrots Simione's unretained expert argument. *See* doc. 110-1 at 10-12.

## A.    SouthernCare's Standing

Before reaching the merits of any arguments, the Court must decide whether SouthernCare has standing to challenge a subpoena directed to Simione, a non-party. Generally, "[a] motion to quash [a subpoena], or for a protective order, should be made by the person from whom the documents, things, or electronically stored information are requested. Numerous cases have held that a party lacks standing to challenge a subpoena absent a showing that the objecting party has a personal right or privilege regarding the subject matter of the subpoena." 9A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2463.1 (3d ed. 2008). A personal right or privilege exists, for example, when the subpoena seeks a party's employment or mental health records from a third-party. *See Stevenson v. Stanley Bostitch, Inc.*, 201 F.R.D. 551, 555 n.3 (N.D. Ga. 2001) (psychiatric records); *Barrington v. Mortg. IT, Inc.*, 2007 WL 4370647 at * 2 (S.D. Fla. Dec. 10, 2007) (employment records). Consistent with the personal right requirement, "[o]bjections unrelated to a claim of privilege or privacy interests are not proper bases upon which a party may quash a subpoena." *Khumba Film (PTY), Ltd. v. Does 1-14*, 2014 WL 4494764 at

* 2 (D. Colo. Sept. 12, 2014). "Thus, even where a party has standing to quash a subpoena based on privilege or a personal right, he or she lacks standing to object on the basis of undue burden." *Id.*

Here, Willis seeks all documents relating to Simione's work as SouthernCare's IRO. That encompasses "any copies of SouthernCare, Inc. documents in [Simione's] possession, including but not limited to patient files, medical records, financial documents, training materials, compliance materials, corporate documents, and marketing materials." *See* doc. 107-1 at 6. To state the obvious, SouthernCare has a personal right to its own documents, even if Simione possesses them, and thus may challenge the subpoena to that extent. *See Barrington*, 2007 WL 4370647 at * 2 (plaintiff had standing to quash subpoena seeking his employment records even though a non-party produced and retained those records). It also has a personal right in documents Simione created as part of its IRO work. Such documents all intimately regard SouthernCare and so resemble employment and psychiatric records, which, while produced by an employer or physician, relate to the employee or patient, who thus has standing to object to their inclusion in

a subpoena. *See Barrington*, 2007 WL 4370647 at * 2; *Stevenson*, 201 F.R.D. at 555 n.3.

SouthernCare does not, however, have standing to object to the subpoena as an overbroad fishing expedition, doc. 110-1 at 15. *See Khumba Film*, 2014 WL 4494764 at * 2 ("undue burden" objection improper when asserted by non-party to a subpoena). Simione, not SouthernCare, is the subpoena target and thus will suffer any burden or expense from the breadth of Willis' requests. An "overbroad" objection is, therefore, Simione's to make, and the Court will not consider SouthernCare's argument on that score.

Nor will it consider SouthernCare's version of the "unretained expert" argument. *See* doc. 110-1 at 10-12. SouthernCare has no personal interest in protecting against an uncompensated taking of Simione's intellectual property (though being the subject matter of that property gives it an interest sufficient to object on confidentiality grounds) and thus lacks standing to object pursuant to Fed. R. Civ. P. 45(d)(3)(B)(ii). *See Khumba Film*, 2014 WL 4494764 at * 2. Given its personal stake in its own documents and those produced about it by Simione, though, the Court will consider SouthernCare's misuse of IRO

documents argument, as well as its commercially sensitive information objection. *See* doc. 110-10 at 8-10.

## B. Trade Secrets and Confidential Business Information

Both SouthernCare and Simione want the subpoena quashed because, they say, it seeks sensitive information protected from disclosure. SouthernCare's concern is its own allegedly confidential commercial information, doc. 110-1 at 8, while Simione balks at disclosing its "confidential business information and proprietary trade secrets." Doc. 109. Willis counters that the protective order already in place safeguards that information and so obviates any disclosure concerns SouthernCare and Simione have. Doc. 114 at 9-11. Even if it does not, Simione and SouthernCare have publicly discussed Simione's IRO reviews and, according to Willis, thus waived any right to keep them behind closed doors. *Id.* at 8.

Courts *may* quash a subpoena if it requires "disclosing a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(d)(3)(B)(i).[4] But "'there is no absolute

___

[4] "The serve-and-volley of the federal discovery rules govern the resolution of a motion to quash." *Mycogen Plant Sci., Inc. v. Monsanto Co.*, 164 F.R.D. 623, 625 (E.D. Pa. 1996).

privilege for trade secrets and similar confidential information.'" *Festus & Helen Stacy Found., Inc. v. Merrill Lynch, Pierce Fenner, & Smith Inc.*, 432 F. Supp. 2d 1375, 1380 (N.D. Ga. 2006) (quoting *Fed Open Mkt. Comm. of Fed. Reserve Sys. v. Merrill*, 443 U.S. 340, 362 (1979)). Instead, "courts weigh the claim to privacy against the need for disclosure, and commonly enter a protective order restricting disclosure."[5] *Festus & Helen*, 432 F. Supp. 2d at 1380. Such an order

---

The subpoenaing party must first show that its requests are relevant to its claims or defenses, within the meaning of Federal Rule of Civil Procedure 26(b)(1). *Id.* at 625–26. Next, the burden shifts to the subpoenaed nonparty who must show that disclosure of the information is protected under Rule 45(d)(3)(A) or (B). *Id.* at 626. If the subpoenaed nonparty claims the protections under Rule 45(d)(3)(B) or asserts that disclosure would subject it to undue burden under Rule 45(d)(3)(A), it must show that disclosure will cause it a 'clearly defined and serious injury.' *City of St. Petersburg v. Total Containment, Inc.*, Case No. 06–cv–20953, 2008 WL 1995298, at *2 (E.D. Pa. May 5, 2008) (undue burden under Rule 45(d)(3)(A)); *In re Mushroom Direct Purchaser Antitrust Litig.*, Case No. 06–cv–0620, 2012 WL 298480, at *5 (E.D. Pa. Jan. 31, 2012) (disclosure of trade secrets under Rule 45(d)(3)(b)(i)). 'This burden is particularly heavy to support a motion to quash as contrasted to some more limited protection such as a protective order.' *Frank Brunckhorst Co. v. Ihm*, Case No. 12–cv–0217, 2012 WL 5250399, at * 4 (E.D. Pa. Oct. 23, 2012).

*In re Domestic Drywall Antitrust Litig.*, 300 F.R.D. 234, 239 (E.D. Pa. 2014).

[5] "This balancing test requires a Court to weigh (1) the relevance, (2) need, (3) and confidentiality of the requested materials, as well as (4) the harm that compliance would cause the subpoenaed nonparty. *Mannington Mills, Inc. v. Armstrong World Indus., Inc.*, 206 F.R.D. 525, 529 (D. Del. 2002) ("[E]ven if the information sought is relevant, discovery is not allowed where no need is shown, or where compliance is unduly burdensome, or where the potential harm caused by production outweighs the benefit."). A court should be "particularly sensitive to weighing the probative

may require that "a trade secret or other confidential . . . commercial information . . . be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(G).

As Willis points out, a protective order already exists in this case that binds the parties (SouthernCare and Willis). Doc. 105. It covers production of (1) health information (*e.g.*, patient records) subject to the Privacy Act and other privacy protections; and (2) documents and information "that [are] proprietary and/or confidential, as well as use of such information in depositions, open court," and the filing of confidential documents. *See id.* For all trade secrets and commercially sensitive information, the protective order requires unredacted production to the other party, but limits the use of that information to this litigation and disclosure to the parties and their experts. *Id.* at 2-3.[6] It does not, however, prevent SouthernCare's objection to the present subpoena. *See id.* at 5 ("This Consent Protective Order does not

---

value of the information sought against the burden of production on [a] nonparty." *Fears v. Wilhelmina Model Agency, Inc.*, Case No. 02–cv–4911, 2004 WL 719185, at *1 (S.D.N.Y. Apr. 1, 2004)." *In re Domestic Drywall Antitrust Litig.*, 300 F.R.D. at 239.

[6] Documents labeled confidential and/or proprietary may be filed with the Court, but only under seal or sufficiently redacted to eliminate confidentiality concerns. Doc. 105 at 3.

constitute a ruling on the question of whether any particular material is properly discoverable or admissible and does not constitute any ruling on any potential objection to the discoverability of any material.").

More importantly, the protective order does not currently apply to Simione at all. *See generally* doc. 105 (only discussing protections and obligations in terms of "the parties" -- Willis and SouthernCare, but not Simione). If it did though, and if the documents Simione and SouthernCare refuse to produce are in fact confidential commercial information,[7] the subpoena poses no danger to Simione or SouthernCare. Any disclosed materials labeled confidential pursuant to the protective order would stay within the confines of this litigation and could not be disclosed to non-parties. Such non-public disclosure, precisely because the public and competitors lack access, would not jeopardize privacy

---

[7] Willis argues that Simione has not demonstrated that the subpoena seeks trade secrets. Doc. 114 at 9. Simione admittedly plies quasi-conclusory statements as evidence that the subpoena seeks confidential information. *See* doc. 109 at 4 ("In its role as an IRO, Simione has developed a reputation as a reliable consultant, and in conducting its work, Simione relies on confidential and proprietary business tools, software and audit practices for efficient and effective analysis."). Regardless, the protective order in place already shields against the dangers of publicly disclosing confidential information. Indeed, one of its express purposes is to "adequately protect . . . confidential and/or proprietary information." Doc. 105 at 1. Whether or not the subpoena seeks trade secrets then is a bit of a moot point since Simione could, assuming the Order applies, avail itself of the Order's protections should it feel certain subpoenaed materials are confidential.

interests or Simione's competitive advantage in the marketplace.[8] *See,*
*e.g.*, doc. 109 ("Simione has a critical interest in its [trade secrets] in
order to preserve its ability to effectively serve and compete in the
healthcare market. . . .").

By contrast, much of the information sought is directly relevant to
Willis' claims.[9] Simione's IRO reviews of SouthernCare's operations only
occurred as part of a settlement of claims in *Rice* stemming from conduct
identical to that Willis challenges here. *See Rice*, No. 2:05-cv-873 (N.D.
Ala. 2005), doc. 43. Put differently, Simione reviewed SouthernCare
with an eye to whether SouthernCare was illegally billing Medicaid for
hospice patients -- the factual core of Willis' claims. *Compare id., with*
doc. 1. No logical leap is needed to conclude that information in the IRO
review materials is relevant and likely to lead to the discovery of
admissible evidence. *See* Fed. R. Civ. P. 26(b)(1). Nor is any leap

---

[8] Exposing sensitive information to a party who also is a competitor, of course, poses privacy concerns not addressed by the protective order, but no one suggests Willis is a competitor of either Simione or SouthernCare.

[9] As discussed *infra*, many of the subpoena's requests are overbroad and thus pose an undue burden on Simione. By modifying the scope of the requests pursuant to Rule 45(d)(3)(B) & (C), however, the Court can preserve the subpoena's legitimate components. It is those remaining bits that are relevant and that weigh heavily when balanced against Simione and SouthernCare's privacy interests as shielded by the protective order.

necessary to conclude that Willis needs the information sought since no other entity, SouthernCare included, has investigated SouthernCare's hospice billing practices in depth over a period of five years and produced detailed analyses of the same. *See In re Domestic Drywall*, 300 F.R.D. at 243-44 (plaintiffs showed substantial need that could not otherwise be met without undue hardship for research firm's reports on drywall industry pricing because (1) firm was only source for the reports, and (2) the reports contained highly relevant information). On balance, then, Willis' need for the IRO reports, given their relevancy and the protective order's mitigation of privacy concerns[10] (again, assuming it applies to

---

[10] Simione also argues that "there is a public interest in maintaining the integrity of Simione's work product . . . because as an IRO, Simione is charged with the responsibility of promoting compliance with statutes, regulations, and written directives of federal health care programs." Doc. 109 at 5. It's true that courts have, at times, limited discovery absent a formal privilege when disclosure implicates a "public" interest. *See, e.g., Apicella v. McNeil Labs., Inc.*, 66 F.R.D. 78, 83 (E.D.N.Y. 1975) (policy, not privilege, of protecting news reporter's sources sometimes warrants discovery exclusions). But here, particularly given the preexisting protective order, no such interest is furthered by quashing Willis' subpoena.

That is not to say that there is *no* public interest in IROs performing competently. They are, after all, tasked by OIG with monitoring compliance with federal law. Assume too that public disclosure of Simione's confidential business information would undermine its ability to operate effectively as an IRO (Simione offers only conclusory assertions to that effect). It nevertheless remains the case that the protective order exists precisely to counter those concerns *and* facilitate a full exchange of information.

In the same breath as it raises the specter of public interest harm, Simione cautions that "if relators could drag non-party IROs into litigation and obtain their

13

Simione), outweighs Simione's and SouthernCare's right to keep their allegedly confidential commercial information totally private.

The *"Public Citizen"*[11] cases Simione and SouthernCare lean on so heavily do not suggest a different result. *Public Citizen I* held that IRO reports made pursuant to a CIA are commercial and confidential for purposes of the Freedom of Information Act (FOIA). 975 F. Supp. 2d at 117 ("[T]he Court finds that information pertaining to the IRO Reports, responses, and corrective action taken in response to the IRO Reports were properly withheld under [the confidential commercial information] Exemption. . . ."). At best, that holding brings portions of Willis' subpoena within Rule 45(d)(3)(B)(i)'s "confidential commercial" ambit and so permits, but does not require, quashing or modification. *Id.* ("[T]he court . . . *may*, on motion, quash or modify the subpoena if it

---

files so easily, the result would be to incentivize relator fishing expeditions." Doc. 109 at 7. That rides a little too high in the saddle because (1) the same could be said for any subpoena directed to a non-party auditor, which can't possibly generate a realistic rule unless a complete ban on Rule 45 in the outside-auditor context is desired, and (2) much of the information Willis seeks is highly relevant to his claims, so the subpoena is not a fishing expedition (at least after pruning to eliminate undue burden, as discussed *infra*).

[11] *Pub. Citizen v. U.S Dep't of Health and Human Servs.*, 66 F. Supp. 3d 196 (D.D.C. 2014) (*"Public Citizen II"*); *Pub. Citizen v. U.S Dep't of Health and Human Servs.*, 975 F. Supp. 2d 81 (D.D.C. 2013) (*"Public Citizen I"*).

requires . . . disclosing trade secrets . . . or confidential . . . commercial information. . . .").

As Willis correctly notes (doc. 114 at 10 n. 7), FOIA determinations and decisions to quash a subpoena are two different analytical animals driven by different considerations.

> Congress enacted the FOIA as a means "to open agency action to the light of public scrutiny." *Am. Civil Liberties Union v. U.S. Dep't of Justice*, 655 F.3d 1, 5 (D.C. Cir. 2011) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)). As the Supreme Court has "consistently recognized [ ] the basic objective of the Act is disclosure." *Chrysler Corp. v. Brown*, 441 U.S. 281, 290 (1979).

*Public Citizen I*, 975 F. Supp. 2d at 93. Some categories of information, like confidential commercial information, however, are exempt from FOIA disclosure. *See, e.g., id.* (evaluating whether IRO reports confidential commercial information for purposes of 5 U.S.C. § 552(b)(4) and thus exempt from disclosure). Hence, in the FOIA world, a document, or portion of a document, is either subject to disclosure or exempt -- there's no middle ground.

Whether to quash a subpoena under Rule 45, in contrast, is not so black and white. Some circumstances require a court to quash. *See* Fed. R. Civ. P. 45(d)(3)(A) ("When Required"). But others merely permit quashing or modification, an option foreign to FOIA. *See id.* at (d)(3)(B)

("When Permitted"). Indeed, Rule 45(d)(3)(B)(i)[12] expressly contemplates that subpoenas seeking confidential commercial information (which FOIA exempts from disclosure) may be quashed or not (thus potentially exposing such information to the public), or be modified to limit the impact of disclosure. Moreover, if the requesting party "shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; *and* ensures that the subpoenaed person will be reasonably compensated," courts can order production "under specified conditions." Fed. R. Civ. P. 45(d)(3)(C) (emphasis added).

Which path a court takes depends on an analysis absent from FOIA -- whether the need for disclosure outweighs a claim to privacy, *see Festus & Helen*, 432 F. Supp. 2d at 1380, and, in the case of specified conditions, whether the serving party satisfies Rule 45(d)(3)(C)(i) & (ii). Put differently, for subpoenas, the presence of confidential commercial

---

[12] Rule 26(c), by allowing protective orders that stop short of forbidding disclosure of confidential commercial information, also highlights how FOIA analyses don't help decide whether to quash a subpoena (though they may aid in evaluating whether information is commercial or confidential). *See* Fed. R. Civ. P. 26(c)(1)(G) (courts may issue orders "requiring that a trade secret or other confidential research, development, or commercial information . . . be revealed only in a specified way," as opposed to an outright ban on disclosure).

information counsels caution and concern for the disclosing party's business interests, but it does not compel quashing as in FOIA. So while *Public Citizen I* may persuade that IRO reports are confidential and commercial, because of FOIA's rigid disclose-don't disclose scheme, it does not help to decide whether to quash Willis' subpoena.[13]

Balancing Simione and SouthernCare's privacy interests against Willis' need for disclosure, on the other hand, does. As discussed above, the protective order already in place (doc. 105) adequately accounts for those interests while permitting disclosure of relevant information. Because (1) Simione will be reasonably compensated for its compliance costs (*see* below), and (2) Willis has shown a substantial need for some (but not all, *see* below) subpoenaed materials that cannot be met without undue hardship, the Court rejects Simione and SouthernCare's trade secrets/confidential commercial information objections to Willis' subpoena, and instead specifies that any production Simione makes in response to the subpoena is subject to the current protective order (doc. 105). *See* Fed. R. Civ. P. 45(d)(3)(C) (courts may "instead of modifying or

---

[13] SouthernCare's contention that "once the determination is made that the documents at issue are both commercial and confidential, they cannot be disclosed," is, as noted, belied by the language of Rules 45 and 26, both of which allow for disclosure of confidential commercial information.

quashing a subpoena [that falls within 45(d)(3)(B)], order . . . production under specified conditions"); *Festus*, 432 F. Supp. 2d at 1380 (finding that trade secrets and confidentiality concerns did not merit quashing and instead compelling discovery subject to a protective order).

### C.    Simione As Unretained Expert

Simione also contends that Willis' subpoena is a backdoor attempt to procure Simione's expert analysis of SouthernCare's operations without compensation.[14] *See* doc. 109 at 7-9. To the contrary, says Willis, "Simione is subpoenaed as a fact witness" because the documents sought "reflect critical facts that are in dispute in this case, including whether SouthernCare was admitting ineligible patients, whether SouthernCare had corporate knowledge of its continued practice of submitting false claims to the government, and whether SouthernCare was taking steps to conceal that fact from the Government." Doc. 114 at 12. Even if that were not the case, Willis argues, "factors applied by courts in considering a motion to quash pursuant to 45(d)(3)(B)(ii) weigh heavily in favor of denying the motion to quash." *Id.*

---

[14] SouthernCare makes a virtually identical argument, *see* doc. 110-1 at 10-12, but as discussed above, it has no standing to object on an unretained expert basis. The Court therefore only considers Simione's version of this Rule 45(d)(3)(B)(ii) argument.

"Under Federal Rule of Civil Procedure 45([d])(3)(B)(ii),[15] a district court is permitted -- but not required -- to quash or modify a subpoena if it 'requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study not made at the request of any party' to the litigation." *In re Pub. Offering PLE Antitrust Litig.*, 233 F.R.D. 70, 76 (D. Mass. 2006) (footnote added). "The advisory committee note clarifies that the [decision whether to quash under Rule 45(d)(3)(B)(ii)] 'should be informed by . . . the degree to which the expert is being called because of his knowledge of facts relevant to the case rather than in order to give opinion testimony. . . .'" *Glaxosmithkline Consumer Healthcare, L.P. v. Merix Pharm. Corp.*, 2007 WL 1051759 at * 2 (D. Utah Apr. 2, 2007).

In this context, "facts" means "events that the non-party allegedly witnessed, not information resulting from [its] study as an expert." *Id.* at * 3. Such "factual information . . . is not shielded by Rule 45([d])(3)(B)(ii)." *Public Offering*, 233 F.R.D. at 77 (citing *Statutory Comm. of Unsecured Creditors v. Motorola, Inc.*, 218 F.R.D. 325, 327 (D.D.C. 2003) ("When . . . a party seeks only factual information relating

---

[15] The 2013 Amendments to the Federal Rules moved the material in Rule 45(c)(3) to what is now (d)(3). The substance of the provision remains the same.

to an issue in the case, a witness cannot demand any greater compensation than any other witness merely because he or she can claim some expertise in a discipline or calling.")); *see also Arkwright Mut. Ins. v. Nat'l Union Fire Ins. Co.*, 148 F.R.D. 552, 557 (S.D. W. Va. 1993) ("Discovery of . . . purely factual information does not comprise the 'intellectual property' of [a witness] and is therefore not protected by Rule 45([d])(3)(B)(ii).") (quoting Fed. R. Civ. P. 45 advisory committee's note to 1991 amendment).

Some of what Willis seeks crosses the line from fact "to opinion or information not describing specific events or occurrences in dispute and resulting from" Simione's evaluations of SouthernCare's Medicaid compliance and overall operations. Fed. R. Civ. P. 45(d)(3)(B)(ii). *In re Domestic Drywall* illustrates why. Plaintiffs there alleged that drywall manufacturers engaged in a price fixing conspiracy, in part by communicating with each other (unbeknownst to third-party TRG) via industry research reports published by TRG. 300 F.R.D. at 239-40. Unsurprisingly, plaintiffs subpoenaed the reports and "the investigative files upon which [they] were based." *Id.* at 239. TRG moved to quash,

arguing, as Simione does here, that forced production would result in disclosure of an unretained expert's opinion.[16] *Id.* at 241.

Although the reports were highly relevant, *id.* at 240-41, the court found portions protected because they contained "company-specific analysis," disclosure of which would "would work a clear and serious injury on TRG" by, in essence, forcing it to give away its intellectual property for free. *In re Domestic Drywall*, 300 F.R.D. at 242. In addition to the analyses, however, the reports also contained "statements from sources within the industry." *Id.* at 241. And those, said the court, were "clearly of a factual nature" and thus fell "outside the protections of Rule 45(d)(3)(B)(ii)." *Id.* at 242.

When applied to Simione's IRO reports, that dividing line -- factual statements unprotected, analyses covered -- results in limited, though not all-encompassing protection. Those portions of the reports that reflect Simione's analysis of SouthernCare's documents, operations, or hospice billing practices qualify as expert opinion that, since Willis has

---

[16] TRG also argued that its reports contained trade secrets exempt from disclosure. *In re Domestic Drywall*, 300 F.R.D. at 243. But that court, like this one, found that a previously entered protective order adequately assuaged TRG's confidentiality concerns while permitting disclosure of materials for which plaintiffs showed a substantial need. *Id.* at 252.

not paid for it,[17] is unretained and protected by Rule 45.[18]  For instance, a section detailing why Simione concludes that SouthernCare illegally (or not) billed Medicare for hospice benefits for a particular patient would qualify as an expert opinion.  *Cf. In re Domestic Drywall*, 300 F.R.D. at 243 (pricing report statement that a manufacturer had "a history of notoriously little pricing discipline but has [recently] exhibited greater pricing discipline in the past 6-12 months" qualified as expert analysis under 45(d)(3)(B)(ii)) (quotes omitted).

Recitation of the facts underlying a hospice billing conclusion, on the other hand, does not.   More specifically, the SouthernCare documents Simione used to evaluate hospice billing practices -- *e.g.*, patient records, and SouthernCare's policies and procedures -- themselves are not expert opinions.  *See id.* at 244 (factual information

---

[17]  Willis attempts to argue that Simione cannot qualify as "unretained" since SouthernCare already paid it for its IRO work.  Doc. 114 at 13.  That's clever, but incorrect.  The term refers to whether the requesting party (Willis) retained the expert, not whether the expert has ever been paid for the particular opinion sought.  *See Walker v. Blitz USA, Inc.*, 2008 WL 5210660 at * 4 (N.D. W. Va. Dec. 12, 2008) ("Whether an expert is retained or unretained is determined primarily by whether the expert is required to provide a written report pursuant to Federal Rule of Civil Procedure 26(a)(2)."); Fed. R. Civ. P 26(a)(2)(A) & (B) (a party must list witnesses they intend to use at trial and those expert witnesses *retained by that party* must provide written reports summarizing their testimony and other information).

[18]  The parties' descriptions of the reports are vague and no copy of a report is before the Court for review.  The Court thus cannot provide specific guidance on which portions of particular documents are subject to Rule 45(d)(3)(B)(ii)'s protections.

on drywall manufacturer's pricing history not protected). They may have formed the factual basis for Simione's protected expert conclusions, but their revelation would not encroach on the service Simione provides its clients, or force a taking of Simione's intellectual property without compensation. *See* Fed. R. Civ. P. 45(d) advisory committee's note to 1991 Amendments.[19] Indeed, the factual, documentary bases for Simione's expert conclusions about SouthernCare's hospice operations came from SouthernCare, not Simione. The protections Rule 45(d)(3)(B)(ii) provides to Simione's analyses in the reports therefore do not apply to the facts they contain.

That is not the end of "unretained expert" analysis though. As with trade secrets, Rule 45 only states that courts "may" modify or

---

[19] The committee noted that:

> Clause ([d])(3)(B)(ii) provides appropriate protection for the intellectual property of the non-party witness; it does not apply to the expert retained by a party, whose information is subject to the provisions of Rule 26(b)(4). A growing problem has been the use of subpoenas to compel the giving of evidence and information by unretained experts. Experts are not exempt from the duty to give evidence, even if they cannot be compelled to prepare themselves to give effective testimony, *e.g.*, *Carter-Wallace, Inc. v. Otte*, 474 F.2d 529 (2d Cir. 1972), but compulsion to give evidence may threaten the intellectual property of experts denied the opportunity to bargain for the value of their services. *See generally* Maurer, *Compelling the Expert Witness: Fairness and Utility Under the Federal Rules of Civil Procedure*, 19 GA.L.REV. 71 (1984).

Fed. R. Civ. P. 45(d) advisory committee's note to 1991 amendments.

quash subpoenas that seek the opinion of an unretained expert, Fed. R. Civ. P. 45(d)(3)(B)(ii), not that they "must." *Id.* at (d)(3)(A). Even when, as here, a subpoena falls partially within (B)(ii)'s ambit, a court can allow production under specified conditions if the requesting party demonstrates substantial need "that cannot otherwise be met without undue hardship" and ensures reasonable compensation. *Id.* at (d)(3)(C).

As discussed above, Willis has demonstrated substantial need for the IRO reports the subpoena seeks; the annual analysis of SouthernCare's hospice billing practices that Simione performed from 2009-2013 exists nowhere else and is highly relevant to the hospice-related claims Willis asserts. Since Willis will pay reasonable compensation (see below), Simione cannot rely on Rule 45's unretained expert provision to quash the subpoena. Instead, the Court specifies that it must, subject to the already-entered protective order (doc. 105), produce the reports Willis seeks.

## D. Undue Burden

In its last substantial objection,[20] Simione claims that the subpoena imposes an undue burden that requires quashing. Doc. 109 at 10 (citing Fed. R. Civ. P. 45(d)(3)(A)(iv)). Willis disagrees, contending that the subpoena's limited time scope, and "specific categories of documents requested" ameliorate any burden on Simione. Doc. 114 at 15. What's more, says Willis, Simione bears the burden of showing undue burden, yet offers nothing more than "[v]ague averments" rather than "actual evidence about burden." *Id.*

Once again, *In re Domestic Drywall* provides cogent guidance.

> To determine whether a subpoena imposes an undue burden, [a] court must consider "(1) [the] relevance of the information

---

[20]   Simione includes a "throw-away" argument that the subpoena requires the disclosure of "protected health information of patients" and other privileged information and thus must be quashed. Doc. 109 at 14-15. Courts indeed cannot allow subpoenas that seek protected or privileged information without adequately protecting affected entities unless an exception or waiver applies. Fed. R. Civ. P. 45(d)(3)(A)(iii). But here patient health information *is* protected. *See* doc. 105 at 1 (protective order addressing production of patient information). Beyond that, Simione offers no specifics. The Court can't guess at what might be privileged, so that argument is unavailing.

SouthernCare includes a throw-away of its own by arguing that Willis seeks to "[mis]use the IRO report[s] and other documents created pursuant to the CIA to identify potential overpayments and use those to prosecute [his] false claims case." Doc. 110-1 at 8. But SouthernCare does not explain how such "misuse" violates Rule 45 or is otherwise prohibited by privilege, statute, or any other authority. It merely invites the Court, on the basis of an unspecified "public policy," to quash Willis' subpoena. That dog just won't hunt and so the Court declines the invitation.

requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed." *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004); *see also United States v. Int'l Bus. Mach. Corp.*, 83 F.R.D. 97, 104 (S.D.N.Y. 1979) (enumerating identical factors).

300 F.R.D. at 252.

Although some of the subpoena's requests seek relevant information, many suffer from serious flaws.[21] Take request no. 1, which seeks Simione's "entire SouthernCare, Inc. file(s)." Doc. 107-1 at 5. Classically overbroad, *see Alig-Mielcarek v. Jackson*, 286 F.R.D. 521, 527 (N.D. Ga. 2012) ("Plaintiff's demands are like a bulldozer that levels an entire hill in the hopes of finding some specks of gold."), nothing about the request limits it to documents relevant to Willis' claims or SouthernCare's defenses. Sensitive documents discussing SouthernCare's executive compensation, for example, a matter wholly irrelevant to this case yet one that Simione could conceivably have documents regarding, would fall within the subpoena as currently written. So would documents covering a wide swath of SouthernCare's

---

[21] As Willis correctly argues, Simione bears the burden of showing that the subpoena imposes an undue burden. *See In re Domestic Drywall*, 300 F.R.D. at 239. Simione met that burden by pointing out to the Court the subpoena's overly broad requests and illuminating why some reach for irrelevant information. *See Zorn v. Principal Life Ins. Co.*, 2010 WL 3282982 at * 2 (S.D. Ga. Aug. 18, 2010).

operations irrelevant to this case (recall that Simione performed "whole-system reviews" of SouthernCare, doc. 110-1 at 11, not just hospice billing practices reviews). Without some limiting component related to the claims or defenses in this case, request no. 1 cannot stand.

Requests no. 3, 5, and 6 suffer from similar flaws. Number 3, which asks for all Simione-SouthernCare correspondence, captures not only hospice billing related communications, but also potentially emails about who's bringing doughnuts to a particular meeting, not to mention myriad other pointless topics that will never lead to admissible evidence. Numbers 5 & 6 seek drafts and exhibits attached to any reports responsive to request no. 4, but Willis has never articulated why he needs those documents. *See* Fed. R. Civ. P. 45(d)(3)(C)(i) (subpoenaing party must show substantial need for documents covered by Rule 45(d)(3)(B) in order for courts to impose specified conditions of production). Put differently, these requests all to some extent seek irrelevant information, are overbroad, and lack the particularity needed to survive a motion to quash. *See In re Domestic Drywall*, 300 F.R.D. at 252.

Allowing requests no. 2 and 7 to survive without any modification also would impose an undue burden. Willis has shown no need for "all

documents reflecting . . . any review . . . of SouthernCare," (request no. 2), and, even if he had, request no. 2 suffers from vagueness (wiggle words like "reflect" and "relate" often impart that quality on discovery requests) that independently justifies quashing. *See, e.g.*, *Fernanders v. Mich. Dep't of Military and Veterans Affairs*, 2013 WL 1945985 at * 1 (E.D. Mich. May 9, 2013) (court found impermissibly vague a request for production that sought "all documents regarding, reflecting, concerning, pertaining to or evidencing any action . . . by Defendant with respect to an employee being suspended"). Request no. 7, which seeks "any copies of SouthernCare . . . documents," is overbroad in the same manner as request no. 1 (again, it contains no tie-in to Willis' claims), except that any such documents referenced in the IRO reports or that provide the factual basis for those reports must be produced (*see* request no. 4 discussion below).

Request no. 4 is different.[22] As IRO, Simione "assess[ed] and evaluat[ed] the eligibility of [SouthernCare] hospice patients for the hospice benefit," and in doing so its IRO reports speak directly to Willis'

---

[22] It seeks "any reports . . . or other documents reflecting or memorializing the results of any review or a[ud]it of any kind . . . [Simione] performed of SouthernCare, Inc. from January 1, 2009 until the present." Doc. 107-1 at 6.

claims. Doc. 114-1 at 9. Indeed, Simione only served as IRO because SouthernCare settled claims similar to Willis', *see Rice*, doc. 43 (N.D. Ala. Jan. 15, 2009), and to ensure that SouthernCare did not commit the very violations Willis contends occurred. *See* doc. 110-1 at 7 (Simione's "primary role [was] to review a sample of the claims [SouthernCare] submit[ed] to Federal healthcare programs, and, as necessary, a system's review of the organization's process for compiling and submitting claims, including coding and medical necessity"). Unlike requests no. 1 and 3, then, no. 4 seeks highly relevant documents to the extent the reports it asks for concern reviews related to SouthernCare's hospice billing practices. *See In re Domestic Drywall*, 300 F.R.D. at 252. Any reports reflecting reviews Simione conducted that are not relevant[23] to Willis' claims need not be produced.

Other factors for evaluating undue burden also suggest that request no. 4 presents no undue burden. The time period covered by the request corresponds to the time period during which Willis alleges violations occurred, *see* doc. 50 at 6, and doesn't include conduct covered

---

[23] Simione must remember though that relevancy is a broad concept, and it should not withhold reviews and reports that arguably speak to a parties' claim or defense. Fed. R. Civ. P. 26(b)(1). Put differently, Simione should not take the invitation to withhold irrelevant reviews as one to obstruct Willis' legitimate quest for discoverable material.

by SouthernCare's settlement in *Rice*. And even though Simione's non-party status is a thumb on the scale in favor of finding undue burden,[24] the protective order's shield and the reasonable compensation Willis will pay for the reports' production eliminates any burden Simione faces. For request no. 4, then, all that remains is relevant evidence to which Willis and the public have a right absent a good reason for non-disclosure. *See Doe No. 1 v. United States*, 749 F.3d 999, 1009 (11th Cir. 2014) (privileges and other doctrines that limit disclosure of relevant materials "contravene the fundamental principle that the public has a right to every man's evidence"). And, as discussed above, every reason Simione offers falls short.

### E. Reasonable Compensation

The Court can only specify that Simione produce its IRO reports if it ensures that Willis pays reasonable compensation. Fed. R. Civ. P. 45(d)(3)(C)(ii). More than that, Rule 45 requires the Court to enforce the

---

[24] *See, e.g., Watts v. SEC*, 482 F.3d 501, 509 (D.C. Cir. 2007) ("The Rule 45 'undue burden' standard requires district courts supervising discovery to be generally sensitive to the costs imposed on third parties."); *Whitlow v. Martin*, 2009 WL 3381013 * 4 (C.D. Ill. 2009) ("Non-party status is a significant factor to be considered in determining whether the burden imposed by a subpoena is undue."); *Cohen v. City of New York*, 255 F.R.D. 110, 117 (S.D.N.Y. 2008) ("[S]pecial weight [should be given] to the burden on non-parties of producing documents to parties involved in litigation.").

duty serving parties and attorneys have to spare the subpoenaed party "undue burden or expense." *Id.* at (d)(1).[25]

To that end, "the drafters of Rule 45([d])(3)(B) sought to prevent the uncompensated taking of intellectual property." *Klay v. All Defendants*, 425 F.3d 977, 984 (11th Cir. 2005). "[R]easonable compensation" for such takings "[can] include[] more than inspection and copying costs," though "it need not always be so." *Id.* at 983. Broadly speaking, "compensation is required when compliance with a subpoena causes an actual property loss." *Id.* at 984.

"The measure of compensation owed . . . depends on the nature of the property." *Id.* at 985. Most of the time, "one party's gain directly corresponds to another party's loss." *Id.* But not always. If:

---

[25] Courts also must "impose an appropriate sanction" on the serving party when a subpoena imposes undue burden or expense. Fed. R. Civ. P. 45(d)(1). Although the Court struck all but one of Willis' subpoena's requests because they impose an undue burden, it declines to impose a sanction beyond the reasonable compensation Willis must pay as part of the Court's specified conditions because the surviving request comprises the subpoena's substantive core. *See Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1185 (9th Cir. 2013) ("[W]hile failure to tailor a subpoena may be a ground for sanctions, the district court need not impose sanctions every time it finds a subpoena overbroad. . . ."); *id.* (sanctions under Rule 45(d)(1) were inappropriate where motion to compel was only partially successful because (1) subpoena was not so facially overbroad, and (2) plaintiffs did not act in bad faith or with an improper motive); *McMullen v. GEICO Indem. Co.*, 2015 WL 2226537 at * 9 (S.D. Fla. May 13, 2015) (courts have "wide latitude" in determining appropriate sanctions under Rule 45(d)(1)).

> one party's use of the property does not necessarily diminish the use and enjoyment of others . . . compensation for the . . . use of the property will ordinarily be limited to the marginal cost incurred by that use. This limitation is proper even if the taking deprives the owner of the opportunity to sell the use of its property at a desired price, because the one immutable principle in the law of just compensation . . . is that the value to the taker is not to be considered, only loss to the owner is to be valued.

*Id.* (quotes and cites omitted).

Compensation for "confidential information," like the American Medical Association's statistical reports in *Klay* and Simione's IRO reports on SouthernCare, is measured by "the loss to the owner of the property." *Id.* "If the enforcement of a subpoena under Rule 45([d])(3)(B) causes no loss, then the amount of compensation reasonably owed will be zero. If the loss to the owner of the information is substantial, then so will be the amount of compensation even if the gain to the taker of the information is slight." *Id.*

As in *Klay*, the production the Court today orders is "strictly limited" by a preexisting protective order (doc. 105) that now applies to Simione. *Klay*, 425 F.3d at 985. "According to the terms of the protective order," *id.*, the IRO reports can only be disclosed to Willis, his counsel, and any outside experts he hires to review the reports. Doc. 105 at 2-3. Too, use of the reports is limited to this litigation. *Id.*

"With these strict limitations on the use of the [IRO reports], [Simione will] not suffer a loss in the commercial value of its property." *Klay*, 425 F.3d at 986. The confidential nature of the reports -- which the Court simply assumes for purposes of addressing this motion -- endures after disclosure thanks to the protective order. *Id.* Nor can Simione's competitors access the reports and harm its competitive advantage by discovering its "proprietary trade secrets, [and] confidential business information." Doc. 109 at 3. Disclosure also will not "deprive [Simione] of the opportunity to sell its intellectual property at its market price to any willing buyers . . . because [Willis is] not allowed to use th[e reports] for nonlitigation purposes." *Klay*, 425 F.3d at 986. Icing the no-compensation cake, Simione presents nothing more than conclusory assertions that "the value of its intellectual property would be harmed by compliance with the order of production." *Id.*; *see also In re Domestic Drywall*, 300 F.R.D. at 239 (the subpoenaed nonparty "must show that disclosure will cause it a clearly defined and serious injury").

Compensation though is more than what in essence are licensing fees for Simione's expert opinion. When courts specify conditions of

production for non-parties, reasonable compensation typically also includes payment for out-of-pocket production expenses. *See* Fed. R. Civ. P. 45(d)(3)(C)(ii); *Cohen v. City of New York*, 255 F.R.D. 110, 126 (S.D.N.Y. 2008) (reasonable compensation includes payment for "time expended and expenses incurred in complying with the subpoenas"). Here, Simione's production of the IRO reports and any SouthernCare documents the reports mention or rely on will require time and resources to (1) identify and copy (whether electronically or on paper) the reports and documents; (2) review the documents and reports for any privileged material;[26] and (3) distribute the final production to Willis. Willis therefore must provide Simione with reasonable compensation for these efforts, including attorney's fees.[27] *See In re Domestic Drywall*, 300

---

[26] "Privileged" in this context does not refer to the already-rejected argument Simione makes that the documents sought contain privileged patient information. They almost certainly do. But the protective order guards against misuse of that information and so neuters any objection on that basis. A privilege review of the IRO reports and documents instead refers to possible attorney-client and other privilege concerns.

[27] The Court leaves the details of what Willis will pay Simione to discussions between counsel. If no agreement can be reached within 14 days of the date this Order is served, Simione is free to move for payment of the above-outlined production expenses. Any such motion, of course, should be accompanied by evidentiary support for the compensation requested. *See Kronos*, 694 F.3d at 372 (reasonable compensation inquiry "requires at least some evidence to support a party's assertion about what the actual costs of compliance will be").

F.R.D. at 250 (attorney's fees a component of "reasonable compensation" under Rule 45(d)(3)(C)(ii)); *see also* Fed. R. Civ. P. 45(d)(2)(B)(ii) (court orders granting motions to compel must protect non-parties forced to produce documents from "significant expense resulting from compliance"); *EEOC v. Kronos Inc.*, 694 F.3d 351, 372 (3d Cir. 2012) ("We also adopt the general proposition that a non-party should not be expected to bear as great an expense as a party when complying with a subpoena, a principle which finds support in the fact that Rule 45 distinguishes between reimbursement for parties and non-parties.").

## F.   Next Steps

After considering and rejecting the majority of Simione and SouthernCare's objections to Willis' subpoena, the Court **ORDERS** the following: in response to request no. 4, Simione must disclose the IRO reports it produced from 2009 to 2013 pursuant to SouthernCare's CIA with the OIG.  It must also disclose all SouthernCare documents that the reports mention or whose facts underlie the reports' analyses.   Any

reports reflecting reviews Simione conducted that are not relevant to Willis' claims need not be produced.[28]

The protective order already entered in this case (doc. 105) governs those productions.[29] The documents and reports Simione produces pursuant to this Order may only be disclosed to Willis, his attorneys, and any testifying or consultative experts that sign the acknowledgment form attached to the protective order. *See* doc. 105 at 9. Disclosure to other non-parties is strictly forbidden and Willis may only use the disclosed documents and reports for purposes of this litigation.[30] *Id.* at 2. Finally, subpoena requests no. 1-3 and 5-7, for a variety of reasons, impose an undue burden on Simione. The Court therefore excises those portions of the subpoena. Fed. R. Civ. P. 45(d)(3)(A)(iii) (subpoenas that impose an undue burden "must" be quashed or modified).

---

[28] Again, relevancy is a broad concept, and Simione must take care not to draw too tight a circle around what it believes satisfies Rule 26.

[29] If Simione believes the current order lacks sufficient protection for its confidential commercial information and trade secrets, it may propose a revised protective order. But this Order's overarching conclusion remains the same: any interests Simione or SouthernCare have in nondisclosure can be adequately addressed by a protective order. If the current one doesn't satisfy, no reason exists (and Simione certainly hasn't provided one) that precludes a revised version from doing so.

[30] All other provisions of the protective order also apply, but those listed above represent the order's protective core.

Simione has 45 days from the date this Order is served to produce the IRO reports and associated documents. Within 14 days of the date this Order is served, Willis and Simione shall confer about the reasonable compensation Willis must pay.[31] If they cannot in good faith arrive at an agreement, Simione may then move the Court to order compensation. It has 10 days after the conclusion of failed negotiations with Willis (hence, 24 days after the date this Order is served) to so move.

## IV. CONCLUSION

Willis' subpoena in many respects imposes an undue burden on a non-party and so must be quashed or modified. Fed. R. Civ. P. 45(d)(3)(A)(iv). But its substantive core survives. Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** Simione's and SouthernCare's motions to quash. Docs. 109 & 110.

**SO ORDERED**, this 23rd day of September, 2015.

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

[31] The Court cautions against "expense abuse" here. If most if not all of the documents sought are in .pdf or equivalent form, then the producing party is entitled to reasonable digital copying costs only, not scan-in costs.